756 So.2d 42 (2000)
Roan PEART, Petitioner,
v.
STATE of Florida, Respondent.
Jorge Prieto, Petitioner,
v.
State of Florida, Respondent.
Victor William Ross, Petitioner,
v.
State of Florida, Respondent.
Nos. SC92629, SC92652 and SC92653.
Supreme Court of Florida.
April 13, 2000.
*43 Benjamin S. Waxman and Alan S. Ross of Robbins, Tunkey, Ross, Amsel, Raben & Waxman, P.A., Miami, Florida, for Roan Peart; Bennett H. Brummer, Public Defender, and Julie M. Levitt, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida, for Jorge Prieto; and Leonard J. Cooperman, Miami, Florida, for Victor William Ross, Petitioners.
*44 Robert A. Butterworth, Attorney General, and Michael J. Neimand, Assistant Attorney General, Miami, Florida, for Respondent.
PER CURIAM.
We have for review the decision in Peart v. State, 705 So.2d 1059 (Fla. 3d DCA 1998), wherein the district court certified conflict with Marriott v. State, 605 So.2d 985 (Fla. 4th DCA 1992), and Wood v. State, 698 So.2d 293 (Fla. 1st DCA 1997), quashed, 750 So.2d 592 (Fla.1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We quash Peart and approve Marriott.[1]
The Peart opinion below is actually five cases that the Third District Court of Appeal consolidated wherein the court reviewed various claims for post-conviction relief involving alleged violations of Florida Rule of Criminal Procedure 3.172(c)(8), which requires that trial courts advise defendants of the possibility of deportation as a consequence to entering pleas of guilty or nolo contendere. Defendants Moses Evans and Jose Jimenez were never in custody and filed writs of error coram nobis to present their rule 3.172(c)(8) claims. The Third District held that
the defendants do not seek coram nobis relief asserting errors of fact or newly discovered evidence, but rather on the basis of an error of law, to wit, an irregularity in their plea colloquy rendering their pleas involuntary. State v. Garcia, 571 So.2d 38 (Fla. 3d DCA 1990). Moreover, these petitions do not assert claims "of such a vital nature that had they been known to the trial court, they conclusively would have prevented the entry of the judgment." Hallman, 371 So.2d at 485. Coram nobis relief, therefore, is not the appropriate remedy.
Peart, 705 So.2d at 1062 (emphasis omitted). The court stated that "there is no present mechanism that provides relief under these circumstances." Id. at 1063.
With respect to defendants Roan Peart and Victor Ross, who were in custody prior to seeking the instant relief and who likewise presented their claims through writs of coram nobis, the Third District held that their proper avenue of relief was to file motions pursuant to Florida Rule of Criminal Procedure 3.850 in order to challenge the voluntariness of their pleas based on the alleged rule 3.172(c)(8) errors. See Peart, 705 So.2d at 1062, 1063. The Third District then applied the two-year limitation period provided in rule 3.850 and barred their claims, holding that a rule 3.850 motion must be filed within two years of the date the judgment and sentence become final, rather than two years from when the defendant is threatened with deportation, thus precluding them from relief. See id. at 1062.
Defendant Jorge Prieto was in custody when he filed his rule 3.850 motion seeking relief. The district court held that in order to successfully obtain postconviction relief based on the alleged rule 3.172(c)(8) error, Prieto would have to prove, among other things, that "had [he] declined the plea offer and gone to trial, [he] most probably would have been acquitted." Peart, 705 So.2d at 1063. The district court granted Prieto leave to amend his motion. See id.
This Court is therefore called upon to resolve three basic legal issues: (1) whether a writ of error coram nobis was the proper vehicle for the noncustodial defendants to raise a violation of rule 3.172(c)(8); (2) whether the two-year limitation in rule *45 3.850 applies to writs alleging a rule 3.172(c)(8) violation and, if so, at what point does the limitation begin to run; and (3) whether defendants attempting to prove such an error must prove, among other things, that had they gone to trial, they probably would have been acquitted. As will be explained below, we hold that a writ of coram nobis was the proper pleading for a noncustodial defendant to file, but that as of our decision in Wood v. State, 750 So.2d 592 (Fla.1999), such claims should now be filed pursuant to Florida Rule of Criminal Procedure 3.850; a two-year limitation period applies, see Wood, and that the limitation period begins to run when the defendant has or should have (whichever is earlier) knowledge of the threat of deportation based on the plea; and, finally, such defendants need not prove a probable acquittal at trial, but rather that they were prejudiced by the error.

I. THE WRIT OF ERROR CORAM NOBIS WAS THE PROPER VEHICLE BY WHICH NONCUSTODIAL DEFENDANTS COULD HAVE ALLEGED RULE 3.172(C)(8) VIOLATIONS.
We begin our review of these issues with a discussion of the writ of error coram nobis, which is an ancient writ designed to correct judgments and sentences based on errors of fact. See Wood, 750 So.2d at 593; Hallman v. State, 371 So.2d 482, 484-85 (Fla.1979). The petition should fully assert the evidence upon which the alleged facts may be proven and the source of such evidence. See Wood, 750 So.2d at 593. The facts upon which the petition is based must have been unknown at trial, and it must appear that the defendant and counsel could not have known of them by the use of diligence. See id. When the alleged facts are sufficient in legal effect-meaning that if the alleged facts had been known by the trial court at the previous hearing the court probably would not have entered a judgment against the defendantthe next step is for the trial court to determine the truth of the allegations in an evidentiary hearing. See id.
In the instant cases, the writ is being used to advance claimed violations of Florida Rule of Criminal Procedure 3.172, which requires that trial judges, among other things, inform defendants of the possibility of deportation when the judges accept the defendants' pleas.[2] Pursuant to rule 3.172(c), this Court has held that a trial court should inquire into a defendant's understanding of the broad spectrum of rights being waived by pleading guilty, so that the record contains an affirmative showing that the defendant voluntarily and intelligently entered the plea. See Koenig v. State, 597 So.2d 256, 258 (Fla.1992). The trial court's failure to follow the above procedure, however, "shall not render a plea void absent a showing of prejudice." Fla. R.Crim. P. 3.172(i).
Viewing the writ of error coram nobis in light of the need to review alleged errors in plea acceptance hearings under rule 3.172(c)(8), we hold that the writ was the proper vehicle by which noncustodial defendants may have alleged rule 3.172(c)(8) violations. The writ of error coram nobis is an established method of collaterally attacking a judgment based on a rule 3.172(c)(8) violation. See, e.g., Gregersen v. State, 714 So.2d 1195 (Fla. 4th DCA), review granted, 728 So.2d 205 (Fla. *46 1998); Beckles v. State, 679 So.2d 892 (Fla. 3d DCA 1996); Dugart v. State, 578 So.2d 789 (Fla. 4th DCA 1991). Federal courts have likewise accepted writs of error coram nobis as vehicles to collaterally attack judgments based on alleged trial court failures to advise federal defendants of possible immigration consequences of their pleas. See United States v. Ayala, 894 F.2d 425, 427-28 & n. 4 (D.C.Cir.1990); Garcia-Trigo v. United States, 671 F.2d 147 (5th Cir.1982). Thus, the writ of error coram nobis has heretofore been an established mechanism to address alleged rule 3.172(c)(8) violations raised by noncustodial defendants.
We conclude that pre-Wood, the writ of error coram nobis was the proper pleading for noncustodial defendants to seek review of a rule 3.172(c)(8) violation. However, since Wood both custodial and noncustodial defendants have been required to employ rule 3.850 to raise their claims. See Wood, 750 So.2d at 593.[3]

II. DEFENDANTS SHALL HAVE TWO YEARS TO FILE PLEADINGS ALLEGING A RULE 3.172(C)(8) VIOLATION AS MEASURED FROM WHEN THE DEFENDANT HAS OR SHOULD HAVE KNOWLEDGE OF THE THREAT OF DEPORTATION.
We now turn to the second question of whether the two-year limitation in rule 3.850 applies to writs alleging rule 3.172(c)(8) violations and, if so, at what point does the limitation period begin to run. The first part of this question must be answered in the affirmative based on our recent decision in Wood, in which we held that as of the date of that decision writs of error coram nobis would be subject to the two-year limitation provided in rule 3.850, although pre-Wood petitions were not subject to a like limitation.[4]See Wood, 750 So.2d at 593.
In answer to the second part of the question, we hold that the limitation period runs from when the defendant has or should have knowledge of the threat of deportation based on the plea. As explained below, in order for a defendant to establish a prima facie case for relief, the defendant must be threatened with deportation resulting from the plea. See infra pp. 47-48. Since the day the defendant gains (or should gain) knowledge of the threat of deportation is the first day the defendant can actually articulate a prima facie case, it stands to reason that the day the defendant learns of the threat should likewise start the running of the two-year limitation period.
We therefore hold that defendants who gained knowledge of the threat of deportation prior to the filing date of this decision shall have two years from this decision to file a rule 3.850 motion alleging their claims for relief. All defendants who subsequently discover threats of deportation shall have two years from the date of such discovery to file their claims for relief.

III. DEFENDANTS DO NOT HAVE TO PROVE A LIKELY ACQUITTAL AT TRIAL TO OBTAIN RELIEF UNDER RULE 3.172(C)(8); RATHER, THEY MUST PROVE PREJUDICE RESULTANT FROM THE ERROR.
*47 Turning to the third and final question presented in this case, we must determine whether defendants attempting to obtain relief under rule 3.172(c)(8) must prove, among other things, that had they gone to trial, they probably would have been acquitted. We answer that question negatively: The defendant need not prove a likely acquittal at trial. In Peart, the court of appeal held that in order for defendant Prieto to obtain relief based on his alleged rule 3.172(c)(8) violation, he would have to prove, among other things, "that had [he] declined the plea offer and gone to trial, defendant most probably would have been acquitted." 705 So.2d at 1063. The court explained that this
requirement comports with the Rule 3.172 requirement that [a] defendant must show prejudice to set aside a plea as not in conformity with the Rule. Because of the special nature of the claims in these cases, that deportation has resulted as a consequence of the pleas, in order to demonstrate prejudice the defendant must demonstrate a probable likelihood that he or she would have been acquitted. To require any less of a showing would subject the trial court to entertaining petitions for relief to set aside pleas in cases where the defendant would nonetheless be found guilty at trial and therefore would be facing the same consequence of deportation. Peart, 705 So.2d at 1063-64 (emphasis omitted and added).
We begin our analysis of this issue by observing that prior to Peart, district courts of appeal have uniformly held that in order for a defendant to obtain postconviction relief based on a rule 3.172(c)(8) violation, the defendant had to prove that the trial court did not provide advice regarding the possible immigration consequences of the plea and resultant prejudice. See Perriello v. State, 684 So.2d 258, 259-60 (Fla. 4th DCA 1996); Beckles, 679 So.2d at 892; De Abreu v. State, 593 So.2d 233, 234 (Fla. 1st DCA 1991).[5] In order to show prejudice pursuant to a rule 3.172(c)(8) violation, defendants had to establish that they did not know that the plea might result in deportation, that they were "threatened" with deportation because of the plea, and that had they known of the possible consequence they would not have entered the plea. See Perriello, 684 So.2d at 259 (holding prejudice shown where defendant was "threatened" with deportation); Marriott, 605 So.2d at 987 (holding that "threat" of deportation of alien was a sufficient showing of prejudice in such cases); De Abreu, 593 So.2d at 234 (holding that the defendant's allegation in a rule 3.850 motion that the trial court violated rule 3.172(c)(8), and that the defendant was subsequently surprised by the "threat" of deportation, constituted a sufficient showing of prejudice to justify an evidentiary hearing).[6] Accordingly, based *48 on established precedent, in order to obtain relief from an alleged rule 3.172(c)(8) error, defendants are not required to prove a probable acquittal at trial.

CONCLUSION
We conclude that prior to Wood the writ of error coram nobis was the proper pleading to file for a noncustodial defendant to allege a rule 3.172(c)(8) violation, although as of Wood such claims should be pled via rule 3.850; that as of Wood there is a two-year limitation period on all claims alleging rule 3.172(c)(8) violations, and that the limitation period begins to run when the defendant learns or should have learned (whichever is earlier) of the threat of deportation based on the plea; and that to obtain relief in such a case the defendant need not prove the likelihood of acquittal at trial, but rather that he or she was prejudiced by the error. We quash Peart, approve Marriott and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, PARIENTE and LEWIS, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which SHAW and LEWIS, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which HARDING, C.J., and QUINCE, J., concur.
ANSTEAD, J., specially concurring.
I fully concur in the majority opinion which has correctly determined that prior to our opinion in Wood v. State, 750 So.2d 592 (Fla.1999), the writ of error coram nobis was a proper vehicle by which a noncustodial defendant could raise various claims, including a rule 3.172(c)(8)-based violation. Wood also held that the expansion of Florida Rule of Criminal Procedure 3.850 to include coram nobis claims was effective only as of the issuance of the Wood opinion. Therefore, the noncustodial claimants involved herein, who filed application for writs of error coram nobis well before the Wood opinion, cannot be time-barred.
However, another important issue meriting discussion is whether a violation of a rule 3.172(c)(8) involves an error of fact for purposes of entitlement to coram nobis relief.[7] The district courts are in conflict on this issue. The Third District, for example, in this case, specifically rejects the argument that a violation of a rule 3.172(c)(8) involves a question of fact, and concludes that "the defendants do not seek coram nobis relief asserting errors of fact or newly discovered evidence, but rather on the basis of an error of law, to wit, an irregularity in their plea colloquy rendering their pleas involuntary." Peart v. State, 705 So.2d 1059, 1062 (Fla. 3d DCA 1998). The Fourth District has taken the opposite view. See Gregersen v. State, 714 So.2d 1195 (Fla. 4th DCA), review granted, 728 So.2d 205 (Fla.1998).
This Court has held, as a general proposition, that a determination of the voluntariness of a plea is a fact-based issue to be raised and resolved in the trial court. See State v. Thompson, 735 So.2d 482, 485 (Fla.1999) ("The question of voluntariness is a matter for the trial court to determine based on all the evidence surrounding the plea...."); State v. Joyce, 734 So.2d 1029 (Fla.1999). Further, at least as far back as 1923, we have held that an issue of voluntariness may be raised as an issue of fact in a petition for a writ of error coram nobis. See Nickels v. State, 86 Fla. 208, 98 So. 502 (1923).[8] Both Thompson and Nickels demonstrate the application of this principle.
*49 In Thompson, the defendant pled guilty to numerous charges, and, subsequent to the plea, the State successfully sought enhanced penalties under the habitual felony statute. See Thompson, 735 So.2d at 483. On appeal, the district court held that although the State gave written notice of its intent to habitualize, the court's failure to confirm that the defendant was personally aware of the reasonable consequences of habitualization, pursuant to Ashley v. State, 614 So.2d 486 (Fla.1993), was fatal to the habitual sentence imposed. See 735 So.2d at 483-84. Subsequently, we held that while a violation of the requirement to give written notice may be viewed as a purely legal issue, an assertion of the involuntariness of a plea based upon the alleged violation of the requirement that the defendant be informed of the reasonable consequences of habitualization requires a fact-based analysis and determination. See id. at 486.
Nickels actually involved an application for writ of error coram nobis. Nickels initially pled not guilty to a charge of rape. See Nickels, 86 Fla. at 226-27, 98 So. at 503. However, subsequently he entered a guilty plea, and he was then sentenced to death by hanging. See id. Afterwards, he filed a writ of error coram nobis, asserting an error of fact, to wit, his guilty plea was not voluntarily entered because he pled only out of fear for his life. See id. at 505. This Court, in an extensive analysis of the proper use of the writ, held that the claim of involuntariness fell squarely within the purview of the writ. See id.
As shown by Thompson and Nickels, we have explained that a determination of the voluntariness of a plea, when challenged, ordinarily involves an issue of fact, not law. See Nickels, 86 Fla. at 228-229, 98 So. at 504; Thompson, 735 So.2d at 483-84. While the defendants' claims in both Thompson and Nickels involved different grounds, the various claims asserted here are all grounded upon similar claims that, as required under rule 3.172(c)(8), a trial court's failure to inform the defendants of the potential deportation consequences of a criminal conviction rendered the defendants' pleas involuntary. Accordingly, Thompson, Nickels, and these cases share an essential characteristic in that they all involve an alleged flaw in the voluntariness of a plea. Therefore, in my view, a challenge to the voluntariness of a plea cannot be said to assert any less of an error of fact just because it is based upon a violation of rule 3.172(c)(8).
I also agree with the majority in rejecting the standard invoked by the Third District in determining whether relief should be granted. In the instant case, in addressing the rule 3.850 motion filed by one of the appellants, Prieto, the Third District held that in order to get relief based on a rule 3.172(c)(8) violation, the defendant must prove the following:
a) the defendant was not advised by the court of the immigration consequences;
b) that defendant had no actual knowledge of same;
c) that INS had instituted deportation proceedings, or defendant is at risk of deportation;
d) that defendant would not have pled had defendant known of the deportation consequences; and
e) that had defendant declined the plea offer and gone to trial, defendant most probably would have been acquitted.

Peart, 705 So.2d at 1063 (footnote omitted). A requirement that defendant must prove that he most probably would have been acquitted clearly represents a much higher standard of prejudice than has been applied by this Court.
Of course, as a general matter, a defendant will not be granted relief when seeking to withdraw from a plea absent a showing of prejudice or manifest injustice. See Williams v. State, 316 So.2d 267, 274-75 (Fla.1975) (citing ABA Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 2.1 (1968)); see also Fla. R.Crim. P. 3.172(i) ("Failure to follow any of the procedures in this rule shall not *50 render a plea void absent a showing of prejudice."). However, as stated in the ABA standards upon which Williams relied in requiring a showing of manifest injustice or prejudice, "[t]he defendant may move for withdrawal of his plea without alleging that he is innocent of the charge to which the plea has been entered." Williams, 316 So.2d at 274 (emphasis added).
While we have not previously defined manifest injustice and prejudice as it relates to a rule 3.172(c)(8) violation, we have done so, at least implicitly, in other contexts in which judgments must be vacated if imposed pursuant to an involuntarily entered plea. In Ashley v. State, 614 So.2d 486, 490-91 (Fla.1993), for instance, we held that the failure of the trial judge to inform the defendant of the consequences of habitualization required that the enhanced sentence be vacated. Though we did not use the words "manifest injustice" or "prejudice," our decision in Ashley can only be interpreted to mean that the uninformed defendant was prejudiced by the imposition of an enhanced sentence predicated upon the uninformed plea. Recently, in State v. Wilson, 658 So.2d 521 (Fla.1995), we considered similar facts and directed that the defendant be given "the opportunity to withdraw his plea and proceed to trial if he so desires." Id. at 523. In neither Ashley nor Wilson did we require that the defendant show any level of probability of acquittal. Rather, the determination of prejudice in those cases was based upon the consequences of the asserted violation, i.e., the imposition of enhanced penalties. See Wilson, 658 So.2d 521; Ashley, 614 So.2d at 490-91.
In the instant case, the consequences of the alleged involuntary pleas include the potential initiation of immigration proceedings against the defendants because of their criminal convictions which in turn were predicated upon an alleged uninformed plea. Such consequences, given their significance, would appear to constitute the requisite showing of prejudice.[9] Thus, it is the exposure to deportation proceedings, not some probability of success at trial, that constitutes the requisite manifest injustice or prejudice arising from the uninformed and involuntary plea.[10]
Finally, I note that the dissent fails to consider the potential and practical effect of his suggested standard of prejudice with regard to a rule 3.172(c)(8)-based claim. Specifically, the dissent adheres to the view that actual deportation, as opposed to the initiation of deportation proceedings, ought to constitute the requisite prejudice. It would seem safe to say that if the defendants have to wait until they are actually deported, it will be too late for these defendants to even bring their claims. That would necessarily be the case unless these defendants are somehow expected to file their rule 3.850 motions from the countries to which they are deported, which in this case would be Grenada, the Dominican Republic, and Jamaica *51 (appellants Ross, Jimenez, Peart and Evans, are respectively from these three countries; Prieto's nationality is not clear). Surely, that cannot possibly be a proper result in light of the initial failure to inform these particular defendants of the important consequences of a guilty plea as mandated by our Rules of Criminal Procedure.
SHAW and LEWIS, JJ., concur.
WELLS, J., concurring in part and dissenting in part.
I concur in result only in respect to appellants Jimenez and Evans because these defendants were never in custody and should be allowed to proceed on the basis we decided in Wood v. State, 750 So.2d 592 (Fla.1999).
However, I specifically do not agree that the writ of coram nobis encompassed the claims of Jimenez and Evans, as the majority writes. The majority has here changed the nature of that writ, and this change will likely result in confusion in future cases. In Wood, this Court did not recede from Hallman v. State, 371 So.2d 482 (Fla.1979). Thus, the boundary of a writ of coram nobis is the correction of errors of fact, not errors of law. I agree with the unanimous opinion of the Third District in stating:
In these cases, the defendants do not seek coram nobis relief asserting errors of fact or newly discovered evidence, but rather on the basis of an error of law, to wit, an irregularity in their plea colloquy rendering their pleas involuntary. State v. Garcia, 571 So.2d 38 (Fla. 3d DCA 1990).
Peart v. State, 705 So.2d 1059, 1062 (Fla. 3d DCA 1998). I do not concur in the majority's reliance upon and approval of Gregersen v. State, 714 So.2d 1195 (Fla. 4th DCA 1998); Beckles v. State, 679 So.2d 892 (Fla. 3d DCA 1996); and Dugart v. State, 578 So.2d 789 (Fla. 4th DCA 1991). I reject Gregersen because I do not believe this issue of "voluntariness" is similar to the issue which was before this Court in Nickels v. State, 86 Fla. 208, 98 So. 497 (1923), which is the slender reed upon which Gregersen rests. The Third District receded from Beckles in this en banc decision. Dugart reaches the conclusion that a claim for ineffective assistance of counsel exists on the basis of the exposure to deportation, citing simply to Dequesada v. State, 444 So.2d 575 (Fla. 2d DCA 1984). Unfortunately, Dequesada has no analysis at all of this issue.
In respect to the parts II and III of the majority opinion, I dissent. I would adopt Judge Shevin's opinion, written on behalf of a unanimous en banc Third District:
As guidance to Prieto and others who would assert similar claims, we point out that to set aside a plea for failure to inform a defendant of immigration consequences pursuant to Rule 3.172(c)(8), the motion must assert, and the defendant must prove the following:
a) the defendant was not advised by the court of the immigration consequences;
b) that defendant had no actual knowledge of same;
c) that INS had instituted deportation proceedings, or defendant is at risk of deportation;
d) that defendant would not have pled had defendant known of the deportation consequences; and
e) that had defendant declined the plea offer and gone to trial, defendant most probably would have been acquitted.
This last requirement comports with the Rule 3.172 requirement that defendant must show prejudice to set aside a plea as not in conformity with the Rule. Because of the special nature of the claims in these cases, that deportation has resulted as a consequence of the pleas, in order to demonstrate prejudice the defendant must demonstrate a probable likelihood that he or she would have been acquitted. To require any less of a *52 showing would subject the trial court to entertaining petitions for relief to set aside pleas in cases where the defendant would nonetheless be found guilty at trial and therefore would be facing the same consequence of deportation. See generally Jones v. State, 591 So.2d 911 (Fla.1991); State v. Fox, 659 So.2d 1324 (Fla. 3d DCA 1995), review denied, 668 So.2d 602 (Fla.1996); Todd v. State, 648 So.2d 249 (Fla. 3d DCA 1994).
Requiring that the defendants establish that they most probably would have been acquitted is concordant with this court's conclusion that these motions must be brought within two years after judgment and sentence become final, as required by Rule 3.850. This two-year limitation assures some realistic probability that evidence will remain available and that the trial court can reliably determine whether defendant most likely would have prevailed at trial. If we adopt defendants' argument that the triggering event is the onset of deportation proceedings, in many cases the court files will be quite stale and evidence or witnesses may or may not be available. The two-year limit addresses this problem.
Peart, 705 So.2d at 1063-64 (footnote omitted). I conclude that this is what the requirements must be for this type of 3.850 claim to be consistent with rule 3.850.
The majority opinion, on the other hand, does not conform with rule 3.850 requirements. Since the adoption of Florida Rule of Criminal Procedure 3.172(c)(8), the trial court has an affirmative duty to inform a defendant that a plea may subject him to deportation. The failure to do so would be an error of law. Rule 3.850 has a two-year limitation. The only exception to the two years are newly discovered evidence or that a fundamental constitutional right asserted was not established within the period provided. Neither of these exceptions apply in these cases.
I cannot agree that the prejudice here pursuant to rule 3.172(i) is the subsequent threat of deportation. The issue can only logically be whether the person's conviction would result in the person's deportation.
As Justice Lewis stated in his concurring opinion in Provenzano v. State, 750 So.2d 597, 604 (Fla.1999), "[p]rocedures are not simply `technical' niceties." The procedure here is a two-year limitation which serves the purpose explained by Judge Shevin and should not be avoided by fixing the two years so that these otherwise stale claims are reviewed.
HARDING, C.J., and QUINCE, J., concur.
NOTES
[1] This Court recently quashed the First District's Wood decision since writs of coram nobis were not subject to a two-year time limitation, although we relied on the First District's reasoning in favor of such a limitation to apply a two-year time limit to cases where the judgment is entered from the filing of our Wood decision forward. We also relied on the First District's reasoning to amend Florida Rule of Criminal Procedure 3.850 by deleting the "in custody" requirement so that custodial and noncustodial defendants may rely on the rule. See Wood v. State, 750 So.2d 592, 593 (Fla.1999).
[2] Rule 3.172(c) provides that

the trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he or she understands:
. . . .
(8) that if he or she pleads guilty or nolo contendere the trial judge must inform him or her that, if he or she is not a United States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service.... [T]his admonition shall be given to all defendants in all cases.
Fla. R.Crim. P. 3.172(c)(8)(emphasis added).
[3] We note that both the failure to advise a defendant of possible deportation consequences and the error of providing "affirmative misadvice" as to such a consequence should be treated the same under the above analysis.
[4] In so holding, we note that in applying the instant limitation period, Florida law provides defendants greater protection regarding this kind of error than that provided under federal law. See United States v. Morse, 36 F.3d 1070, 1071 (11th Cir.1994)(holding that advising a defendant of the possibility of deportation is not a requirement under federal law since deportation is only a collateral, versus a direct, consequence of a plea); United States v. Del Rosario, 902 F.2d 55, 59 (D.C.Cir. 1990)(same).
[5] This Court included advisement of the possible immigration consequences of the plea during the plea acceptance hearing because deportation of a person from the United States often is just as harsh as other consequences, if not more so. See In re Amendments to Florida Rules of Criminal Procedure, 536 So.2d 992 (Fla.1988). Before the amendment, this Court treated a trial court failure to warn a defendant of the possible deportation consequences of a plea as a "collateral consequence" that would not support a claim of ineffective assistance of counsel. State v. Ginebra, 511 So.2d 960 (Fla.1987). One year later, however, we established rule 3.172(c)(8). We subsequently acknowledged that our old case law was superseded by the new rule in State v. De Abreu, 613 So.2d 453 (1993)("In re Amendments to Florida Rules of Criminal Procedure, 536 So.2d 992 (Fla.1988),... supersede[s] Ginebra to the extent of any inconsistency.").
[6] See Beckles, 679 So.2d at 892 (holding that being taken into custody by immigration authorities because of the conviction based on the plea was sufficient to show prejudice); Spencer v. State, 608 So.2d 551 (Fla. 4th DCA 1992)(holding that appellate immigration court decision that defendant was deportable was sufficient to show prejudice); see also State v. Oakley, 715 So.2d 956, 957 (Fla. 4th DCA 1998)(holding that defendant failed to show prejudice, despite rule 3.172(c)(8) violation, where defendant was deportable based on previous drug trafficking conviction).
[7] The writ of error coram nobis is limited to the correction of errors of facts, not law. See Hallman v. State, 371 So.2d 482, 485 (Fla. 1979).
[8] The Fourth District in Gregersen relied on Nickels.
[9] As noted by the court below, "[t]he immigration consequences of a felony conviction have become increasingly harsh. A person who has lived in this country with his or her family for many years may consider deportation a far more draconian punishment than a brief period of incarceration." Peart, 705 So.2d at 1063 n. 2.
[10] Naturally, the specific facts of a given case will dictate whether the requisite manifest injustice or prejudice has been established. Moreover, our manifest injustice standard is similar to the one used by many other jurisdictions. See, e.g., Barnett v. State, 91 Hawai'i 20, 979 P.2d 1046, 1054 (1999) ("Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea."); State v. Aaron, 95 Wash.App. 298, 974 P.2d 1284, 1286 (1999) (same); State ex. rel Warren v. Schwarz, 219 Wis.2d 615, 579 N.W.2d 698, 708 (1998) (same). The only other issue that must usually be resolved in these other jurisdictions is whether immigration consequences are direct or collateral. See Barnett, 979 P.2d at 1054; Schwarz, 579 N.W.2d at 708. Since rule 3.172(c)(8) expressly requires that a trial judge inform all defendants of immigration consequences, the direct-versus-collateral concern is not an issue in Florida.