FARMER, Judge.
This case involves a second degree murder conviction for a crime committed twenty years ago. Defendant was arrested in 1977 but was soon found incompetent to stand trial and sent to an institution. In 1983, his mental faculties having been found restored, he pleaded guilty. In 1995, he moved to withdraw his plea of guilty on the grounds that his defense counsel advised him, among other things, that he could earn gain time for good behavior to reduce the amount of time he might actually serve on a life sentence. After an evidentiary hearing, the trial court denied relief.
The bare procedural facts are relatively clear. Defendant was indicted in July 1977 for capital murder, grand theft and grand theft of an auto. Shortly thereafter, he was committed as incompetent to stand trial. After five years of incompetency, he was finally determined to be able to assist in his own defense in 1983. A few months later, he pleaded guilty to second degree murder with the understanding that the court could impose any sentence up to a maximum of life imprisonment. Two months after the plea, he was in fact sentenced to life in prison. He entered the prison system in 1983 and has remained there since.
In 1991, he filed a petition for habeas corpus, seeking a belated appeal on the grounds that his attempted appeal from the sentence was erroneously dismissed owing to the fault of his then court appointed counsel in 1984. We granted him the belated appeal. Tal-Mason v. Singletary, 596 So.2d 796 (Fla. 4th DCA 1992). On direct appe'al, we affirmed the sentence in 1993. Tal-Mason v. State, 621 So.2d 1085 (Fla. 4th DCA 1993). Within two years of that affirmance, he filed a motion under rule 3.850 to withdraw the plea. The order denying such relief is the subject of this appeal.
Defendant raised four specific grounds on which to withdraw his plea:
I. He contended that his plea was involuntary because he decided to do so upon erroneous advice from his defense counsel that:
A. he would be eligible for parole immediately;
B. he would serve no more than seven years in prison;
C. his sentence could be reduced by gain time.
II. His plea was induced by the state’s knowing use of false evidence as,to the cause of the victim’s death and the absence of evidence that the death was caused by homicide.
III. There was a lack of a factual basis to support the plea as to second degree murder.
IV. He was incompetent when he entered the plea.
The trial court summarily denied relief as to grounds II, III, and IV, and held an eviden-tiary hearing as to ground I. Because we find that the record supports the trial court’s *455 summary disposition of the latter three grounds, we will address only the first contention — namely the alleged erroneous advice of his counsel at the time of the plea.
In Ray v. State, 480 So.2d 228 (Fla. 2d DCA 1985), which we find especially apt, the court explained:
“We recognize that a defendant may not always be entitled to withdraw a plea of guilty because his sentence is not what his lawyer led him to expect. However, we perceive a difference between a ‘judgment call,’ whereby an attorney offers an honest but incorrect estimate of what sentence a judge may impose, and a clear misstatement of how the law affects a defendant’s sentence. A criminal defendant is entitled to reasonable reliance upon the representations of his counsel and, if he is misled by counsel as to the consequences of a plea, he should be permitted to withdraw that plea. In the instant ease we are unable to state as a matter of law that ineffectiveness of counsel did not occur if Ray’s allegations are true.” [e.s., e.o.]
480 So.2d at 229. The present appeal involves a contention as to a “clear misstatement of how the law affects a defendant’s sentence.”
With regard to the issue we are about to discuss, there are two logical possibilities for a defendant to show that his plea was’induced upon misadvice of counsel. On the one hand, he could establish that counsel made a specific promise to him about his sentence that was erroneous when made. The other possibility is that he understood an erroneous statement by his counsel about his sentence to be an explicit promise, and his understanding was both reasonable and excusable under the circumstances. See Dolan v. State, 618 So.2d 271, 274 (Fla. 2d DCA), review denied, 626 So.2d 204 (Fla.1993) (defendant entitled to relief under rule 3.850 to vacate his plea if he can demonstrate either that his counsel made an explicit promise to him, or “that he erroneously understood a statement about parole to be an explicit promise, and that his misunderstanding was reasonable and excusable under the circumstances in which it arose”). In this case, the trial court found from the testimony of defendant’s counsel that his attorney made no explicit promises to him about his sentence, and the record supports the trial judge’s resolution of the conflicting testimony about an explicit promise.
We thus turn our attention to the second alternative — i.e., that defendant reasonably and excusably may have understood a specific statement by counsel about his sentence to be an explicit promise. Defendant testified that his attorney told him that he would be eligible to earn gain time against his sentence and thereby reduce the amount of actual time that he might serve. The specific testimony of the attorney (which the trial judge said generally that he accepted) as to this contention was as follows:
“Q. Did you discuss with David or, you know, would you normally have discussed that his sentence would be reduced by gain time if he was well behaved in prison and if he took advantage of educational programs and things like that?
“A. I don’t recall as I sit here now what the exact situation was at that period of time. But I think that certainly would be the type of information that I would discuss — would have discussed. And I have to say that as best as I can recall right now that at the time that would have applied, yes. He would have been — that would have been gain time or good time on the positive side. And yet there would have been negative consequences from any disciplinary problems in prison. And that I would have conveyed that to him, yes.” [e.s.]
Other uncontradicted record evidence shows that defendant has been a model prisoner. He has earned his college degree and has never had a disciplinary infraction while he has been in prison.
There also seems to be no dispute that, under a life sentence, he cannot earn gain time, no matter how exemplary his conduct may be while incarcerated. As of now, the gain -time statute explicitly limits its application to sentences for a term of years. See § 944.275(3)(a), Fla. Stat. (1995) (“The department shall also establish for each prisoner sentenced to a term of years a ‘tentative release date’ which shall be the date project *456 ed for the prisoner’s release from custody by virtue of gain-time granted or forfeited as described in this section.”). When the crime was committed in 1977, however, the gain-time statute was differently worded. It then read:
“The Department of Offender Rehabilitation shall grant the following deductions for gain-time on a monthly basis, as earned, from the sentences of every prisoner who has committed no infraction of the rules of the department ..., to wit:
(a) Five days per month off the first and second years of the sentence;
(b) Ten days per month off the third and fourth years of the sentence; and
(c) Fifteen days per month off the fifth and all succeeding years of the sentence ....” [e.s.]
§ 944.27(1), Fla. Stat. (1977). Although this provision lacks the immediate clarity of the present statute, we construe its meaning to be the same. A life sentence has no “first and second year of the sentence” because the sentence pronounced by the trial court contains no “years” as such. Rather, it contains a single measurement, “life,” which could, in retrospect, turn out to be moments, days, weeks or months — as well as, of course, years. We understand the statutory term “sentence,” however, to mean the term imposed by the court and not the amount of time actually later served by the prisoner.
If defense counsel specifically limited his advice about gain time to a sentence of years rather than a life sentence, then his advice was correct, and defendant has failed to show any erroneous advice. If, on the other hand, ■ counsel’s advice was general and could have reasonably been understood by defendant to apply to any sentence that the judge might impose, including a life sentence, then defendant would have shown a positive statement that defendant could logically have understood as an explicit promise that gain time would be available to reduce his sentence. His reliance on such advice would have been both understandable and excusable. In this circumstance, his plea would have been involuntary in the sense that it would have been based on misadvice of counsel as to the amount of time he could expect to serve under a life sentence.
The trial court’s order denying all relief does not, however, address this precise issue. It discusses in some detail the issue relating to an alleged promise that defendant would not serve more than seven years and thus would have been released long before now. The court expressly found that no such explicit promise was ever made by counsel. It further discusses the contention that the plea was induced upon an alleged assertion that defendant would suffer the death penalty if he went to trial and lost. Again, the trial court found that his counsel made no such statement and that the fear of the death penalty was primarily raised by his parents, to whom he turned for advice at the time.
But there is nothing in the trial judge’s order addressing counsel’s above quoted testimony regarding eligibility for gain time. Indeed, there was no further follow up questioning by either counsel at the evidentiary hearing about gain time. While the plea was “open” and the court could thus have imposed a sentence of a specific term of years instead of life, it is not at all clear from counsel’s testimony that the statement about gain time was expressly limited by him to any sentence of years but would not apply to a life sentence.
Therefore, we cannot say that the record entirely supports the trial court’s denial of relief as to this issue. When the record does not conclusively demonstrate that a defendant is entitled to no relief under rule 3.850, it is necessary to return the case to the trial judge for the development of the record on any unresolved issues. See, e.g., Groover v. State, 489 So.2d 15, 17 (Fla.1986) (where record did not conclusively show that defendant was entitled to no relief under rule 3.850, remand for further proceedings in trial court was required); Setzer v. State, 575 So.2d 747 (Fla. 5th DCA 1991) (where record was silent as to whether defendant was advised that plea would result in loss of gain time, case had to be remanded to trial court for further proceedings on motion under rule 3.850).
Accordingly, we remand the case to the trial court for further proceedings. The trial *457 court is authorized to take further testimony from defense counsel and defendant, and such other persons or other evidence as the court may be advised. At the close of any additional evidence on the matter, the trial judge should make explicit findings as to the nature and extent of counsel’s specific advice to defendant concerning gain time and its applicability to any sentence that might be imposed.
REVERSED AND REMANDED.
STONE, C.J., and DELL, J., concur.