980 So.2d 542 (2008)
Leonardo PENA, Appellant,
v.
STATE of Florida, Appellee.
No. 4D08-649.
District Court of Appeal of Florida, Fourth District.
April 16, 2008.
Rehearing Denied May 21, 2008.
*543 Grisel Ybarra of Grisel Ybarra, P.A., Miami, for appellant.
No appearance required for appellee.
PER CURIAM.
On June 4, 2007, appellant, Leonardo Pena, moved to set aside his 1991 plea, pursuant to Florida Rule of Criminal Procedure 3.850 and 3.172(c)(8). Appellant alleged he was never made aware of the immigration consequences of his plea, entered on February 15, 1991, and that his motion was timely filed pursuant to State v. Green, 944 So.2d 208 (Fla.2006). The particular facts of this case require us to explain why the motion was not timely. For the reasons explained below, the lower court properly denied relief, albeit for a different reason than given. See Arthur v. Milstein, 949 So.2d 1163, 1166 (Fla. 4th DCA 2007) (quoting Robertson v. State, 829 So.2d 901, 906 (Fla.2002)) ("`tipsy coachman' doctrine, allows an appellate court to affirm a trial court that `reaches the right result, but for the wrong reasons' so long as `there is any basis which would support the judgment in the record'").
The record shows appellant accepted a plea in L.T. case number 90-9795-CF-FA, wherein the State charged him with trafficking in cocaine, possession of cannabis, and possession of drug paraphernalia. The plea required appellant to provide substantial assistance, which he did. On December 6, 1991, the lower court imposed a seven and one-half year sentence. The record clearly shows that at the time of his plea, the lower court did not inform appellant of the possible immigration consequences of his plea. In his affidavit, appellant claims if he had known of the immigration consequences of the plea he would have exercised his right to a trial. Finally, he avers that he was not made aware of the immigration consequences until he received a notice to appear before an immigration judge.[1]
While not specifically alleged in the motion or attached affidavit, the record shows that in October 1998 appellant received notice from the federal government, concerning his possible removal, when appellant was told to report to Oakdale, Louisiana. In February 1999, the Immigration and Naturalization Service ("INS") (the predecessor to the United States Citizenship and Immigration Services) notified appellant that, because of insufficient information, he would not be detained. However, by July 11, 2000, the INS picked up appellant and held him at the Krome Detention Center where the government began formal removal proceedings. In August 2000, while appellant was still being held at the Krome facility, he filed a sworn motion to withdraw his plea, pursuant to rule 3.850 and Peart v. State, 756 So.2d 42 (Fla.2000).
After consulting with an immigration attorney, appellant believed he was not subject to removal. Born in the Dominican Republic, he came to the United States when he was three years old with his *544 father and siblings. Appellant claimed his father and mother entered into a separation agreement in the Dominican Republic, prior to his arrival in this country, where the father gained sole legal custody. In 1976, when appellant was twelve, his father became a naturalized citizen of the United States. Appellant believed federal immigration law, based on these facts, would prevent his removal.[2] Due to this belief, appellant voluntarily dismissed his August 2000 motion for postconviction relief, by notice filed May 31, 2001.
Believing he was a citizen on this set of facts, appellant moved to terminate the removal proceedings in the federal immigration court. The federal agency disagreed and denied relief because appellant could not prove that his parents were legally separated. The Department of Homeland Security denied his application for a certificate of citizenship, concluding appellant's parents were not legally separated and that appellant's mother became a naturalized citizen on July 14, 1996, when appellant was no longer a minor. By May 4, 2007, the Administrative Appeals Office had affirmed the department's decision, thus effectively closing any avenue of relief as to appellant's citizenship status.
As a result of this ruling, appellant filed the instant motion for postconviction relief, again seeking to withdraw his 1991 plea, this time pursuant to Green. The State responded by claiming the motion was time-barred, successive, without merit, and barred by laches. The lower court denied relief, believing appellant was engaging in "gotcha tactics" by dismissing his first motion and then waiting until his immigration status was determined before seeking the same relief nearly seven years later. This is the order appellant now appeals.
To determine whether appellant's 2007 motion is timely, we must examine Peart and Green. In 2000, the supreme court issued Peart, which attempted to unify the application of rule 3.850 motions alleging a violation of rule 3.172(c)(8). Therein, the court resolved the conflict between the districts as to several issues, including when the two-year limitations period begins to run for such claims. The opinion also clarified what allegations must be proven to warrant relief. The court determined a two-year limitations period would apply and would begin to run "from when the defendant has or should have knowledge of the threat of deportation based on the plea." Peart, 756 So.2d at 46. Further, the court concluded the movant would not need to prove an acquittal was likely had the case gone to trial, but merely that there was prejudice by the lack of a sufficient warning. Id. at 48.
In the subsequent years, judges had a difficult time applying this standard, as recognized by the court in Green. 944 So.2d at 210 ("[O]ur review has alerted us to larger problems in applying Peart fairly, efficiently, and with adequate regard for finality."). Based upon a renewed look, the court determined that the two-year limitations period would commence "when the judgment and sentence become final unless the defendant could not, with the exercise of due diligence, have ascertained within the two-year period that he or she was subject to deportation." Id. "Further, the defendant must establish only that he or she is subject to deportation because of the plea, not as we held in Peart, that he or she has been specifically threatened with deportation." Id. The opinion held that "[t]hese changes govern in any case in *545 which a trial court accepts a plea of guilty or no contest on or after the date of this decision." Id.
In the conclusion to Green, the court made it clear that "[o]ur holding in this case reduces the time in which a defendant must bring a claim based on an alleged violation of rule 3.172(c)(8)." Id. at 219. As a result, the opinion suggests fairness would require "defendants whose cases are already final will have two years from the date of this opinion in which to file a motion comporting with the standards adopted today." Id. It is the application of this last sentence that requires our attention.
Appellant, in his initial brief, claims that this exception to the two-year limitations period should be applied without any context or consideration to the facts of his case. In essence, appellant asks us to read this provision and allow for his second motion to be considered timely, despite the fact he moved for relief on the exact same claim in August 2000. We refuse to rule in such a manner as we do not believe the language of Green should be read to revive a claim that has already gone stale under Peart.
In Markland v. State, 971 So.2d 832 (Fla. 3d DCA 2007), the defendant entered pleas to first-degree murder and other life felonies in exchange for the State dropping the death penalty. Markland received a total of six life sentences to run consecutively. After the plea was entered, "an immigration judge entered a deportation order against" Markland on January 13, 1995. Id. at 833 n. 1. In 2005, Markland moved to withdraw his plea under Peart. The lower court denied relief as untimely. After the supreme court issued Green, Markland filed another rule 3.850 motion seeking to withdraw his plea. The lower court denied relief and the Third District affirmed, reading Green as not permitting such a motion: "The Green decision `reduces the time in which a defendant must bring a claim based on an alleged violation of rule 3.172(c)(8).' The Green decision does not revive a claim which has already been found to be time-barred under Peart." Id. at 834 (citation omitted). While we acknowledge the facts of that case are not identical, we agree with the Third District's interpretation of Green that it does not revive a claim that had already been known to exist prior to the issuance of the Green opinion.
In the instant case, the record shows that appellant was aware of the immigration consequences of his plea as early as October 1998 and no later than July 2000, when he was placed in the Krome Detention Center. Under Peart, appellant had two years to file his rule 3.850 motion, and did, in fact, seek such relief on August 11, 2000, timely under either starting date. The fact appellant voluntarily dismissed the timely motion, under the mistaken belief he was a citizen and thus not subject to removal, acts to effectively terminate appellant's rights to challenge the plea under Peart. When the two-year limitations period ended, at the latest in July 2002, appellant no longer had any right to seek relief under Peart and his claim had been extinguished under that case.
Appellant suggests the language in Green, allowing for motions to be filed within two years of that opinion when the cause became final prior to that ruling, would act to revive his Peart claim. Appellant infers that Green must be read so liberally as to require a court to consider, on the merits, any and every motion so long as it is filed within two years of Green. We refuse to accept this expansive reading of Green. If the court intended to allow repeat motions, such as this, it would have undoubtedly expressed such an intent. Instead, we believe the exception to the two-year limitations period, for cases already final prior to Green, was intended *546 to apply to litigants who had not yet been made aware of pending removal proceedings or who had not yet made any attempt to have their pleas withdrawn.
This would be the "fair" interpretation of the exception language, and thus the logical and rational way to interpret Green. The supreme court tried to fashion a remedy that would prevent the "unfair" consequence that would befall a defendant, if Green were to apply to cases already final for more than two years prior to the Green opinion. In such cases, a litigant may not have had a cognizable claim under Peart (if there had not been any removal proceedings instituted) but then had the claim extinguished under Green because the conviction and plea were final for more than two years.[3] We believe this is the problem the supreme court tried to correct with the exception.
The lower court denied relief in this case because it believed appellant had engaged in "gotcha tactics" and because appellant had not shown sufficient prejudice. We believe the proper analysis, as explained above, was to conclude the instant motion was untimely filed. We affirm the lower court's ruling which denied relief, though for the reasons we express above.
Affirmed.
FARMER, GROSS and HAZOURI, JJ., concur.
NOTES
[1] In the affidavit, appellant does not specifically allege when he was put on notice, a critical fact in the determination of timeliness, as will be discussed.
[2] Section 321(a)(3) of the Immigration and Nationality Act (now repealed) provided that when a parent becomes a citizen, any child under the age of 18 and living with the parent, becomes a lawful permanent resident alien if that parent had legal custody through a valid separation agreement or dissolution order.
[3] For example, and using similar facts, had a defendant entered a plea in 1991, that conviction would have become final in 1993, if no appeal were taken. If the federal government did not begin removal proceedings until 2007, that defendant would not have had a cognizable claim under Peart until 2007, as there was never a "threat" of deportation until 2007. Were Green to apply, in the absence of the exception, this defendant could never have brought a claim under Peart and then would have been denied any chance at relief under Green. Clearly, to us, the supreme court envisioned such a situation and tried to provide a prophylactic remedy by allowing this hypothetical defendant to bring, for the first time, a motion under Green, because the defendant could not have filed such a claim before, under Peart.