987 So.2d 190 (2008)
The STATE of Florida, Appellant,
v.
Jose Antonio FREIJO, Appellee.
No. 3D07-1421.
District Court of Appeal of Florida, Third District.
July 23, 2008.
*191 Bill McCollum, Attorney General, and Richard L. Polin, Assistant Attorney General; Katherine Fernandez Rundle, State Attorney, and Angelica D. Zayas, Assistant State Attorney, for appellant.
Robbins, Tunkey, Ross, Amsel, Raben & Waxman and Benjamin S. Waxman; Steven A. Goldstein, Miami, for appellee.
Before RAMIREZ, SUAREZ, and ROTHENBERG, JJ.

ON MOTION FOR REHEARING
ROTHENBERG, J.
Appellant, the State of Florida, seeks rehearing following the issuance of our opinion on October 17, 2007. We grant the motions and substitute this opinion in its place.[1]
The question before us, in this and other unrelated but pending cases, is whether the Florida Supreme Court's decision in State v. Green, 944 So.2d 208 (Fla.2006), revived certain categories of cases in which a defendant seeks to withdraw a prior plea because of the trial court's alleged failure to advise the defendant of the possible immigration and deportation consequences of the plea. Based on our review of the developments preceding the decision in Green and the intention expressed in that opinion to remedy those conditions that have "delayed these claims to a point that has proven unacceptable," id. at 217, we conclude that (1) Green did not revive claims previously adjudicated on the merits, or unadjudicated claims that unquestionably were time-barred at the time Green was announced, and (2) pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v), we should, and now do certify that we have passed on the following question of great public importance:
WHETHER A DEFENDANT MAY OBTAIN THE BENEFIT OF A NEW TWO-YEAR WINDOW PERIOD UNDER STATE V. GREEN, 944 So.2d 208 (Fla.2006), IF THE CLAIMANT RECEIVED ACTUAL NOTICE OF A DEPORTATION PROCEEDING MORE THAN TWO YEARS BEFORE THE MOTION TO WITHDRAW PLEA?

Rules 3.172(c)(8) and 3.850, and the Peart Decision
We need not review the over twenty-year evolution of the federal and state case law that brought us here. That has been done thoroughly in Green and in the case which prompted the further analysis, Peart v. State, 756 So.2d 42 (Fla.2000). It will suffice to summarize that: (1) Florida Rule of Criminal Procedure 3.172(c)(8) mandates that a defendant entering a plea of guilty or nolo contendere be given an admonition that "if he or she is not a *192 United States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service" ("INS");[2] (2) a defendant who did not receive such an admonition and later becomes subject to deportation may seek to vacate his or her plea under Florida Rule of Criminal Procedure 3.850;[3] and (3) there arose a wide variety of issues regarding the limitations period or periods associated with the rule.
To balance the divergent goals of finality on the one hand, and fair notice on the other, in 2000, our Supreme Court in Peart clarified both the procedure governing a defendant's motion to vacate his guilty plea based on the trial court's failure to comply with rule 3.172(c)(8), and when the rule 3.850 limitations period begins to run. In that opinion, the Florida Supreme Court held that (1) rule 3.850 was the proper procedural vehicle for claimants, who were in or out of custody, and who had become "subject to deportation," to move to withdraw their pleas; (2) the two-year limitations period in rule 3.850 would begin to run "when the defendant has or should have knowledge of the threat of deportation based on the plea," Peart, 756 So.2d at 46; (3) defendants who gained such knowledge prior to its decision (April 13, 2000), would have two years from the date of its decision within which to file a motion for relief under rule 3.850; and (4) defendants who were threatened with deportation after Peart was issued would have two years from the date of the discovery of the threat to file a motion to set aside his or her plea.
The appellee here, Jose Antonio Freijo, was served with a deportation notice on November 8, 2002. Under Peart, he was required to file, but did not file, a motion to withdraw his plea under rule 3.850 by November 8, 2004.[4] Thus, after November 8, 2004, his claim was time-barred.

October 26, 2006: Green
With that background, we consider Green in an effort to determine whether the Florida Supreme Court revived Freijo's right to move to withdraw his plea, entered over eleven years before Green was announced, for a further two years. We use the term "revive" because it is indisputable that Freijo's current claim was time-barred and subject to summary denial after November 8, 2004. Green was not issued until October 26, 2006, nearly two years after Freijo's claim was time-barred under Peart.
Freijo maintains that one sentence contained at the conclusion of the Green opinion gave him until October 26, 2008, within which to file his otherwise time-barred motion under rule 3.850. The sentence Freijo relies on is: "Therefore, in the interest of fairness, defendants whose cases are already final will have two years from the date of this opinion in which to file a motion comporting with the standards adopted today." Green, 944 So.2d at 219. Applying our best efforts to understand and apply the entire Green decision to Freijo's claim (and those of many similarly situated defendants), we disagree with Freijo's argument. There are two clear indications within the Green decision that *193 the revival of these already indisputably time-barred claims was not intended.

Green's Stated Intention Was to Reduce Delay
The analysis in Green addressed the practical issues confronting trial courts, district courts, and the State in the wake of the Peart decision. Trial courts and the district courts applied varying standards to a claimant's knowledge regarding the "threat" of deportation in determining the commencement of the two-year limitations period under rule 3.850 in cases in which an actual deportation notice had not been served. One of the concerns that arose from the application of Peart was that claimants would delay the filing of their motions to withdraw their pleas until they received an actual deportation notice because the passage of time would reduce the State's ability to re-try cases in the event a plea is withdrawn.
Green explicitly sought to explore and remedy "the problems that have arisen from the application of Peart in the lower courts." 944 So.2d at 212. The Florida Supreme Court described the problems caused by protracted delay and a claimant's disincentive to file a claim promptly after Peart:
District court decisions demonstrate that as applied, Peart actually deters defendants from raising rule 3.172(c)(8) claims within the first several years after a plea. The claim does not ripen until a defendant is threatened with deportation. The conflict issue in this case reflects division in the district courts on what constitutes "threatened deportation." However, under any of the thresholds for threatened deportation applied by the district courts, many motions claiming rule 3.172(c)(8) violations that have been filed long after the two-year period governing other postconviction claims under rule 3.850(b) are nonetheless timely under Peart.

Green, 944 So.2d at 214.
The Green court identified several cases where motions to withdraw a plea, which were timely under the Peart standard of "has or should have knowledge of the threat of deportation," were filed many years after the entry of the plea: State v. Lindo, 863 So.2d 1237 (Fla. 4th DCA 2003), filed twelve years after the plea; Alfaro v. State, 828 So.2d 1056 (Fla. 3d DCA 2002), filed fifteen years after the plea; Ghanavati v. State, 820 So.2d 989 (Fla. 4th DCA 2002), filed fourteen years after the plea; and Gray v. State, 774 So.2d 30 (Fla. 2d DCA 2000), filed ten years after the plea. Green, 944 So.2d at 214. The Court described the problems flowing from such delays:
Delayed filing hampers adjudication because transcripts of plea colloquies that would demonstrate whether defendants were advised of immigration consequences often become unavailable over time. When a transcript was not previously prepared, court reporters are required to retain original notes or electronic records no longer than ten years in felony cases, five years in misdemeanor cases.
....
In addition, when a defendant's motion to withdraw a plea is granted for failure to give the rule 3.172(c)(8) warning, the passage of time between the guilty plea and the postconviction motion puts the State at a great disadvantage in seeking to try the case to conviction. Evidence may become unavailable and witnesses' memories may fade.
Id. at 215-16.[5]
After noting these delays and the problems flowing therefrom, the Florida *194 Supreme Court held that "Peart's requirements for filing a timely claim and establishing a prima facie case for relief on a rule 3.172(c)(8) violation have delayed these claims to a point that has proven unacceptable." Green, 944 So.2d at 217.
It follows that the objective of the Florida Supreme Court in Green was to discourage further delay. There is no indication that the Court sought to revive claims, such as Freijo's, that were already unquestionably time-barred. Green sought to establish an objective standard, rather than the existing subjective Peart standard ("has or should have knowledge of the threat of deportation"), to apply in cases in which the movant had not already been served with deportation papers as a result of the applicable plea. Movants such as Freijo were and are already time-barred because there was no doubt regarding their awareness of the deportation prejudice occasioned by their pleas.

This Claimant Cannot Plead Applicability of the New Window
In the same paragraphs of the conclusion in Green in which the Florida Supreme Court announced the new two-year window, the Court specified that it was requiring motions to withdraw a plea, on the basis that the defendant was not advised of the potential immigration consequences of his or her plea, must be filed within the rule's two-year limitations period, commencing when the judgment and sentence become final, unless the defendant alleges and proves that he or she could not have ascertained the immigration consequences of the plea with the exercise of due diligence within the two-year period. Id. at 219. The Court did not revive previously adjudicated or unadjudicated claims that were time barred at the issuance of its opinion in Green. Freijo's motion was, therefore, time-barred when the Green opinion was issued, because he himself has alleged that: (1) he was aware of the immigration consequences of his plea for a full two years before Green; and (2) he filed no motion to withdraw his plea within that period. As a result, no unfairness has occurred in his case, and he cannot "file a motion comporting with the standards adopted" in Green. Id.

Pena v. State
Our analysis of Green is consistent with the Fourth District's refusal to allow the revival of a similarly barred motion in Pena v. State, 980 So.2d 542 (Fla. 4th DCA 2008). After considering the objectives described in the Peart and Green cases, the Fourth District addressed Pena's argument that he should be allowed two years from the date Green was decided within which to file his motion to withdraw his plea. Pena, like Freijo in the instant case, was actually aware of the immigration consequences of his plea over two years before Green was decided, but nevertheless, did not file a motion to withdraw his plea.
The Fourth District held: "[W]e believe the exception to the two-year limitations period, for cases already final prior to Green, was intended to apply to litigants who had not been made aware of pending removal proceedings or who had not made any attempt to have their pleas withdrawn." Pena, 980 So.2d at 545-46 (emphasis added). In Pena's case, his plea was entered in 1991, and in 1998, he was notified by the federal immigration authorities *195 that he might be deported. In July 2000, INS detained Pena and commenced formal removal proceedings.
In the instant case, Freijo entered his plea in 1995. He was served with an INS notice in 2002, and he filed his motion to withdraw his plea in 2007. Plainly, Freijo's claim was time-barred well-before Green was decided. We agree with the Fourth District that the Florida Supreme Court did not intend in Green to revive such claims for a further two years.

Conclusion
The Florida Supreme Court's holding in Green states no intention to revive claims that were unquestionably time-barred before the date of the decision.[6] All indications are to the contrarythat Green sought only to limit further delay by a limited number of claimants who had not yet received actual notice of the deportation consequences of their earlier pleas.
We therefore grant the State's motion for rehearing, and certify to the Florida Supreme Court that we have passed on the question of great public importance identified at the outset of this opinion, and reverse the circuit court's order granting Freijo's motion to vacate his 1995 conviction.
Reversed.
NOTES
[1] In a prior order, we withdrew the panel's prior per curiam affirmance.
[2] INS is the predecessor to the Citizenship and Immigration Services.
[3] Prior to Wood v. State, 750 So.2d 592 (Fla. 1999), and Peart, defendants not in custody also utilized a petition for writ of error coram nobis for this purpose.
[4] The existing record does not disclose any date prior to November 8, 2002, by which Freijo had or should have had knowledge of the threat of deportation based on his plea.
[5] This Court has also commented on such consequences. See Wright v. State, 711 So.2d 66, 68 (Fla. 3d DCA 1998) (approving the imposition of the bar of laches when the defendant is not diligent and State is prejudiced by the passage of many years because "[t]here must be some point at which criminal convictions and sentences are final and unassailable").
[6] We have already declined to extend the new two-year window created by Green to a case in which a claimant's motion to modify plea based on an alleged failure to warn on deportation consequences was denied by the trial court and affirmed here before Green was decided. Markland v. State, 971 So.2d 832 (Fla. 3d DCA 2007).