PER CURIAM.
 

 This case is before the Court for review of the decision of the First District Court of Appeal in
 
 Canseco v. State,
 
 12 So.3d 923 (Fla. 1st DCA 2009). In its decision, the district court ruled upon the following question, which the court certified to be of great public importance:
 

 WHETHER A DEFENDANT MAY OBTAIN THE BENEFIT OF A NEW TWO-YEAR WINDOW PERIOD UNDER
 
 STATE V. GREEN,
 
 944 So.2d 208 (Fla.2006), IF THE CLAIMANT RECEIVED ACTUAL NOTICE OF A DEPORTATION PROCEEDING MORE THAN TWO YEARS BEFORE THE MOTION TO WITHDRAW PLEA
 

 Canseco,
 
 12 So.3d at 923. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(4), Fla. Const.
 

 FACTS
 

 Alfredo Canseco entered a no contest plea in 1995 to one count of possession of a controlled substance and was sentenced to two years’ probation. Canseco signed an acknowledgement of rights that contained the statement, “I understand that if I am not a United States citizen, a plea of guilty or no contest could result in my deportation.”
 
 [1]
 

 
 *576
 
 On August 12, 2002, the Immigration and Naturalization Service (INS), issued a Notice to Appear in removal proceedings under section 240 of the Immigration and Nationality Act.
 
 [2]
 
 The notice informed Can-seco that as a Mexican national, he was subject to removal from the United States as a result of his 1995 conviction.
 

 Canseco filed a Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 on October 23, 2008. Canseco alleged that his nolo con-tendere plea was not knowingly, intelligently, and voluntarily entered because the possibility of deportation was not explained, in violation of rule 3.172(c)(8). As a result of his plea, Canseco has been deported.
 

 The circuit court denied Canseco’s motion, finding (1) Canseco failed to sign a verification oath, (2) even if he had signed the oath, Canseco was notified in 2002 by INS that he was subject to deportation, (3) Canseco was sworn and examined by a judge before he entered his plea, (4) he was represented by an attorney at the time of his plea, and (5) the plea form demonstrates that Canseco was on notice that he was subject to deportation. Thus, the circuit court found Canseco’s motion to be without merit.
 

 Canseco appealed to the First District Court of Appeal, alleging that the circuit court erred by summarily denying his postconviction motion. In relevant part, Canseco argued that his motion was timely because this Court created a two-year window for all defendants whose convictions were already final in
 
 State v. Green,
 
 944 So.2d 208 (Fla.2006). The First District affirmed, but certified the question.
 
 Canseco v. State,
 
 12 So.3d 923 (Fla. 1st DCA 2009).
 

 Canseco sought review by this Court.
 

 ANALYSIS
 

 We begin with a discussion of this Court’s ruling in
 
 Peart v. State,
 
 756 So.2d 42 (Fla.2000), which was overturned six years later by this Court’s decision in
 
 Green.
 
 Because Canseco argues that the language in
 
 Green
 
 should be interpreted to allow any defendant to file a motion to vacate a plea within two years of its issuance, we next explore how the district courts of appeal have interpreted our opinion. Ultimately, we conclude that
 
 Green
 
 did not revive claims that were final under
 
 Peart,
 
 and applies to only those claims that were not yet ripe under
 
 Peart
 
 that would have been time-barred by
 
 Green.
 

 In
 
 Peart
 
 we held that (1) defendants not in custody should use rule 3.850 to raise rule 3.172(c)(8) claims,
 
 [3]
 
 (2) the two-year period for raising rule 3.172(c)(8) claims commences when the defendant learns of the immigration consequences of the plea, and (3) defendants need not demonstrate probable acquittal at trial to obtain relief.
 
 Peart,
 
 756 So.2d at 44-45. We approved
 
 *577
 
 language requiring defendants to “establish ... that they were ‘threatened’ with deportation because of the plea,” but did not expound on the meaning of “threatened” as it related to this requirement.
 
 Id.
 
 at 47. Courts interpreted the clause to require commencement of deportation proceedings, or similar governmental action, to establish a threat of deportation.
 

 “By starting the two-year clock with actual or imputed notice of a threatened deportation rather than finality of the judgment and sentence ...
 
 Peart
 
 authorized claims that otherwise would have been time-barred.... ”
 
 Green,
 
 944 So.2d at 214. As applied,
 
 “Peart
 
 actually deterfred] defendants from raising rule 3.172(c)(8) claims within the first several years after a plea.”
 
 Green,
 
 944 So.2d at 214.
 

 We accepted review in
 
 Green
 
 and became alerted “to larger problems in applying
 
 Peart
 
 fairly, efficiently, and with adequate regard for finality.”
 
 Green,
 
 944 So.2d at 210. We then receded from
 
 Peart
 
 because of these unintended consequences and held that the limitation period for filing a motion to vacate a plea alleging noncompliance with hule 3.172(c)(8) “commences when the judgment and sentence become final unless the defendant could not, with the exercise of due diligence, have ascertained within the two-year period that he or she was subject to deportation.”
 
 Green,
 
 944 So.2d at 210. It is apparent, then, that our goal in deciding
 
 Green
 
 was to limit delay in the filing of rule 3.172(c)(8) claims. Accordingly, the district courts of appeal have interpreted
 
 Green
 
 not to create a two-year window for defendants who received actual notice of deportation proceedings more than two years before filing a motion to withdraw plea.
 

 The Third District Court of Appeal recently addressed this issue in
 
 State v. Freijo,
 
 987 So.2d 190 (Fla. 3d DCA 2008). In
 
 Freijo,
 
 the Third District concluded “that (1)
 
 Green
 
 did not revive claims previously adjudicated on the merits, or unadjudicat-ed claims that unquestionably were time-barred at the time
 
 Green
 
 was announced.”
 
 Id.
 
 at 191. Jose Antonio Freijo was served with a deportation notice on November 8, 2002.
 
 Id.
 
 at 192. Under
 
 Peart,
 
 he was required to file a motion to withdraw his plea under rule 3.850 by November 8, 2004.
 
 Id.
 
 Freijo did not file, and thus his claim was time-barred under
 
 Peart. Id.
 
 Like Canseco, Freijo argued that this Court’s ruling in
 
 Green
 
 revived his right to move to withdraw his plea.
 
 Id.
 
 Freijo relied on the same language in
 
 Green
 
 that Canseco relies on in the instant case. In disagreeing with Freijo’s assertion, the Third District reasoned:
 

 There are two clear indications within the
 
 Green
 
 decision that the revival of these already indisputably time-barred claims was not intended.
 

 The analysis in
 
 Green
 
 addressed the practical issues confronting trial courts, district courts, and the State in the wake of the
 
 Peart
 
 decision. Trial courts and the district courts applied varying standards to a claimant’s knowledge regarding the “threat” of deportation in determining the commencement of the two-year limitations period under rule 3.850 in cases in which an actual deportation notice had not been served. One of the concerns that arose from the application of
 
 Peart
 
 was that claimants would delay the filing of their motions to withdraw their pleas until they received an actual deportation notice because the passage of time would reduce the State’s ability to re-try cases in the event a plea is withdrawn.
 

 Green
 
 explicitly sought to explore and remedy “the problems that have arisen from the application of
 
 Peart
 
 in the low
 
 *578
 
 er courts.”
 
 [Green
 
 ] 944 So.2d at 212....
 

 It follows that the objective of the Florida Supreme Court in
 
 Green
 
 was to
 
 discourage
 
 further delay. There is no indication that the Court sought to revive claims, such as Freijo’s, that were already unquestionably time-barred.
 

 Freijo,
 
 987 So.2d at 192-94. Further, the court noted that in establishing the new two-year window,
 
 Green
 
 also provided an exception where, “the defendant alleges and proves that he or she could not have ascertained the immigration consequences of the pleas with the exercise of due diligence within the two-year period.”
 
 Id.
 
 at 194 (citing
 
 Green,
 
 944 So.2d at 219).
 

 The Third District also came to this conclusion earlier in
 
 Markland v. State,
 
 971 So.2d 832 (Fla. 3d DCA 2007). In
 
 Markland,
 
 the appellant had a deportation order entered against him in 1995, but did not move to withdraw his plea until 2005.
 
 Id.
 
 at 833. The trial court denied the claim as untimely, which was affirmed on appeal.
 
 Id.
 
 In 2007, relying on
 
 Green,
 
 Markland filed a motion for postconviction relief seeking, again, to set aside his plea. The Third District held: “The
 
 Green
 
 decision ‘reduces the time in which a defendant must bring a claim based on an alleged violation of rule 3.172(c)(8).’ The
 
 Green
 
 decision does not revive a claim which has already been found to be time-barred under
 
 Peart.” Markland,
 
 971 So.2d at 834 (quoting
 
 Green,
 
 944 So.2d at 219). The Third District reached this conclusion again in
 
 State v. De Armas,
 
 988 So.2d 156, 157-58 (Fla. 3d DCA 2008)
 
 (“Green
 
 actually sought to
 
 reduce
 
 the uncertainty and delay involved in the filing and determination of motions to vacate pleas grounded on ‘immigration consequences.’ ...
 
 Given
 
 did not, however, open a new two-year window for the filing of such motions by defendants with over two years of actual knowledge of the immigration consequences of the challenged plea before the filing of the motion to vacate.”); and again in
 
 Morales v. State,
 
 988 So.2d 705, 706 (Fla. 3d DCA 2008) (holding that where a defendant’s claim became time-barred under
 
 Peart, Given
 
 did not revive it).
 

 The Fourth District Court of Appeal reached the same conclusion in
 
 Pena v. State,
 
 980 So.2d 542 (Fla. 4th DCA 2008). In
 
 Pena,
 
 the appellant accepted a plea and was sentenced in 1991.
 
 Id.
 
 at 543. The record showed that Pena was unaware of the immigration consequences at the time of his plea.
 
 Id.
 
 In 1998, Pena was notified of removal proceedings.
 
 Id.
 
 He moved to withdraw his plea in 2000.
 
 Id.
 
 However, because Pena believed that he could not be deported, he voluntarily dismissed his motion.
 
 Id.
 
 at 544. After Pena’s motion to terminate the removal proceedings was denied, he filed a successive motion to withdraw his 1991 plea.
 
 Id.
 
 The trial court denied his motion, and the Fourth District affirmed the denial, reasoning, “[W]e do not believe the language of
 
 Given
 
 should be read to revive a claim that has already gone stale under
 
 Peart.” Pena,
 
 980 So.2d at 545. “Instead, we believe the exception to the two-year limitations period, for cases already final prior to
 
 Green,
 
 was intended to apply to litigants who had not yet been made aware of pending removal proceedings or who had not yet made any attempt to have their pleas withdrawn.”
 
 Id.
 
 at 545-56.
 

 Additionally, in
 
 Prieto v. State,
 
 989 So.2d 688 (Fla. 4th DCA 2008)
 
 review denied,
 
 1 So.3d 173 (Fla.2009), the Fourth District explained, “The supreme court did not announce any intent to allow defendants to revive an already stale claim, but rather closed a loophole that resulted in a scenario where a defendant could not file a sufficient claim under
 
 Peart,
 
 and would be
 
 *579
 
 unable to file a timely claim under
 
 Green.” Id.
 
 at 690. Like Canseco, Prieto received notice of his deportation while
 
 Peart
 
 was still controlling law and did not seek relief under
 
 Peart. Prieto,
 
 989 So.2d at 689-90.
 
 [4]
 

 In
 
 Ventura v. State,
 
 977 So.2d 794 (Fla 2d DCA 2008), the Second District Court of Appeal demonstrated clearly how the two-year
 
 Green
 
 window was intended to operate. In
 
 Ventura,
 
 the appellant pleaded guilty in 1994 to carrying a concealed weapon and driving while his license was suspended.
 
 Id.
 
 at 795. In September 2006, he filed a motion for postconviction relief asserting that he was not advised that his plea might subject him to deportation and that in July 2006 he was threatened with deportation.
 
 Id.
 
 His motion was dismissed without prejudice because of an outstanding arrest warrant.
 
 Id.
 
 Ventura refiled his motion in December 2006, which the trial court dismissed relying on
 
 Green,
 
 noting that Ventura filed his motion more than two years after his case was final.
 
 Id.
 
 On appeal to the Second District, Ven-tura argued that the trial court misread
 
 Green,
 
 to which the Second District agreed, stating:
 

 Under
 
 Green
 
 a defendant such as Ven-tura, whose case is already final, has a period of two years from the date of
 
 Green
 
 to bring a claim alleging “that the trial court did not advise him at the time of his plea that he could be deported, that he would not have entered the plea if properly advised, and that the plea in fact renders him subject to deportation.”
 

 The trial court’s requirement that Ventura also allege and prove that he could not have ascertained the immigration consequences of his plea with the exercise of due diligence within two years of his 1994 convictions is at odds with
 
 Green.
 
 Such a requirement would undermine the fairness concerns expressed by the supreme court as to defendants whose convictions were already final but who may have been able to obtain relief under
 
 Peart
 
 because of a recent threat of deportation.
 

 Ventura,
 
 977 So.2d at 796-97 (citation omitted) (quoting
 
 Green,
 
 944 So.2d at 219).
 

 Canseco’s argument — that
 
 Green
 
 provided a two-year window in which all defendants whose cases were final could file a motion to vacate a plea — is not supported by a logical reading of the opinion. If Canseco’s argument was taken to its logical conclusion,
 
 all
 
 defendants whose cases were final when
 
 Green
 
 was issued, even those that were disposed of under
 
 Peart’s
 
 guidelines, would be eligible to file a motion to withdraw plea. Surely such a result was not this Court’s intent. Indeed, no district court has interpreted
 
 Green
 
 to provide such a result. Accordingly, we answer the certified question in the negative and approve the decision below.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . Canseco was provided with an interpreter, but contends that he did not fully comprehend the written plea form that he signed.
 

 [2]
 

 .
 
 See
 
 8 U.S.C. § 1229a. (2006).
 

 [3]
 

 . Rule 3.172(c)(8) provides:
 

 Except when a defendant is not present for a plea, pursuant to the provisions of rule 3.180(d), the trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he or she understands:
 

 (8) that if he or she pleads guilty or nolo contendere, if he or she is not a United States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service. It shall not be necessary for the trial judge to inquire as to whether the defendant is a United States citizen, as this admonition shall be given to all defendants in all casesf]
 

 Fla. R.Crim. P. 3.172(c)(8).
 

 [4]
 

 . Prieto entered his plea on August 10, 1989, received notice that he would face deportation on October 17, 1995, but did not file his motion challenging his conviction until February 15, 2008.
 
 Prieto,
 
 989 So.2d at 689.