NORTHCUTT, Judge.
Donald Conionilli appeals from an order denying his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 8.850. We affirm the denial, although we articulate a basis different from that relied on by the postconviction court because of an argument raised by Conionilli on appeal.
The record reflects that on April 5,1990, following a jury trial, Conionilli was sentenced as a habitual violent felony offender to life in prison with a fifteen-year minimum-mandatory term for burglary of a dwelling with assault or battery. This court affirmed the conviction and sentence, Conionilli v. State, 587 So.2d 1333 (Fla. 2d DCA 1991) (table decision), with the mandate issuing on October 21,1991.
In the instant proceeding, Conionilli filed a one-claim rule 3.850 motion alleging ineffective assistance of counsel. He claimed that during plea negotiations, counsel transmitted the State’s plea offer — thirty years’ imprisonment followed by forty years’ probation — and also informed him that if instead he went to trial and lost, he would be eligible for release after serving fifteen years. Because the latter alternative sounded more advantageous, Conionilli opted to proceed to trial. He argued in his motion that release after fifteen years sounded all the more real when the trial court used such phrasing as “he shall not be eligible for release for fifteen years” in describing the minimum-mandatory provision even as the court pronounced a sentence of “life in prison.”[1] Conionilli alleged that he had not raised this issue earlier because it was only after serving fifteen years and making inquiries of the Parole Commission and the Department of Corrections (DOC) that he became aware that he was not eligible for early release due to his life sentence. Conionilli argued that the information from the authorities was a newly discovered fact such that his claim should not be time-barred.
The postconviction court ruled that because Conionilli filed his motion after the issuance of the supreme court’s opinion in Ey v. State, 982 So.2d 618 (Fla.2008), his claim was controlled by Ey and was therefore time-barred. On appeal, Conionilli argues that this court should establish a two-year post-Ey window analogous to that set by the supreme court in State v. Green, 944 So.2d 208 (Fla.2006), for claims of failure to be informed of the immigration consequences of a plea. Conionilli argues that if such a window had been available to him, his motion would have been timely, because Ey was issued on February 28, 2008, and his motion was served from DOC on September 25, 2008.
We conclude, however, that even if a two-year post-Ey window existed, Conion-illi would not be able to avail himself of it. Conionilli’s sentencing took place on April *382 15, 1990, and 165 days of jail credit were awarded. Thus, the fifteen-year minimum-mandatory period began on October 22, 1989. The last day of the fifteen-year period was therefore October 21, 2004. However, the documentation attached to Conionilli’s motion indicates that the earliest inquiry he made of the correctional authorities was sometime around January 5, 2008,[2] which is three years and seventy-six days following the end of the fifteen-year minimum-mandatory term. Conionil-li fails to explain why, if he believed from as early as the plea and sentencing stage that he would be released after fifteen years, he waited over three years after the end of that period to begin making inquiries of the correctional authorities.
This chronology is similar to one that caused the supreme court to define a limitation on Green’s two-year window. See Canseco v. State, 52 So.3d 575 (Fla.2010). Green concerned the trial court’s alleged failure to advise the defendant that his plea would render him subject to deportation as required by Florida Rule of Criminal Procedure 3.172(c)(8). 944 So.2d 208. Prior to Green, the two-year clock for filing such a claim began running “when the defendant has or should have knowledge of the threat of deportation based on the plea.” Peart v. State, 756 So.2d 42, 46 (Fla.2000). The court in Green receded from Peart, holding that the default two-year clock of rule 3.850(b) would apply: the claim “must be brought within two years of the date that the judgment and sentence ... become final.” Green, 944 So.2d at 218. The court also created a two-year window from the issuance of Green for “defendants whose cases are already final.” Id. at 219. However, in Canseco the court narrowed the availability of this window, ruling that those defendants who had actual notice of deportation proceedings (such as from federal immigration officials) more than two years before the filing of their rule 3.850 motions to withdraw plea could not avail themselves of the window; the window did not exist to revive such time-barred claims. 52 So.3d at 576.
The change in the law on the time available for filing motions about sentencing consequences is analogous to that in Green and Peart for misadvice about immigration consequences. Under pr e-Ey case law, the two-year clock for filing a claim of misadvice about sentencing consequences began running “when the authorities provided information to the defendant that belied the earlier advice of counsel,” Singleton v. State, 981 So.2d 1259, 1261 (Fla. 2d DCA 2008). Ey, however, held that the movant must raise the claim within two years from when his conviction became final pursuant to rule 3.850(b).[3] 982 So.2d at 625. However, if such a claim is raised prior to the date of the decision in Ey, the pre-Ey timing rule applies to the movant’s benefit. E.g., Flint v. State, 13 So.3d 70, 72 (Fla. 2d DCA 2009); Singleton, 981 So.2d 1259. Unlike Green, however, Ey did not create an extra two-year window. 982 So.2d 618. Conionilli argues that this court should do so.
*383 However, even if we assume that a two-year post-Ey window should exist for claims alleging misadviee about sentencing consequences, we conclude that Conionilli would not be able to avail himself of the window because, having allegedly believed from the pretrial stages that he would be released after fifteen years following an adverse result at trial, he had notice that such an outcome was not forthcoming when he found himself still in prison on October 22, 2004, the day after the minimum-mandatory term expired. At the latest, this is the date that began the two-year motion-filing period under pre-Ey case law. That period ended October 22, 2006, after which time motions relating to counsel’s alleged misadviee about sentencing consequences were time-barred. Because Conionilli failed to meet this deadline for filing his rule 3.850 motion, his claim would not have been timely even if a two-year post-Ey window existed. Cf. Canseco, 52 So.3d 575. The order on appeal is therefore affirmed.
Affirmed.
VILLANTI and LaROSE, JJ., Concur.

. Conionilli's claim — that release during his lifetime would be possible even with a "life sentence” — is at least initially plausible in that parole for a life sentence did exist until several years prior to Conionilli’s offense, see § 947.16(l)(d), Fla. Stat. (1983), and that release options other than parole existed as of the time of his offense, see § 921.001(11), Fla. Stat. (1989). In reality, however, the one potentially applicable option, conditional release, see § 921.001(1 l)(e), Fla. Stat. (1989), does not apply to life sentences. This is because conditional release is dependent on the prisoner’s reaching a "tentative release date," § 947.1405(2), Fla. Stat. (1989), which is in turn defined in the gain-time statute, § 944.275(3)(a), Fla. Stat. (1989). However, such a date does not exist for life sentences because it is defined only for sentences that are terms of years. Id.; Tal-Mason v. State, 700 So.2d 453, 455-56 (Fla. 4th DCA 1997).

. Conionilli's first inquiry to the Parole Commission, according to a letter he attached to his motion, was dated January 22, 2008; somewhat confusingly, the response from the Commission is dated January 5, 2008. The discrepancy does not affect our analysis. Co-nionilli also inquired of DOC on February 13, 2008, and received a response dated February 14.

. Under the two-year deadline defined in rule 3.850(b), Conionilli’s motion was clearly untimely. See Beaty v. State, 701 So.2d 856, 857 (Fla.1997) (holding that the two-year period for filing a motion for postconviction relief begins to run upon issuance of District Court of Appeal’s mandate on direct appeal).